IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERESA MARQUEZ,

    Plaintiff,

v.                                                                                    Case No. CIV 08-1134 JC/RLP

STATE OF NEW MEXICO
DEPARTMENT OF CORRECTIONS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support Thereof (Doc. 35), filed February 15, 2010 ("Motion"). Having reviewed the parties' submissions and being otherwise fully informed in the premises, the Court will GRANT the Motion, as set forth more fully herein.

**I.      FACTUAL BACKGROUND**

Plaintiff is a long-time employee of the Corrections Department, having begun in 1987 and, since 1997, having held the position of Inmate Discipline Hearing Officer (classified as an Administrative Law Judge). *Motion* at 3. In March 2005, a letter of reprimand was placed in her file, noting insubordination in that Plaintiff had refused a work assignment and refused to accept verbal directives. *Id.* Two months later, Plaintiff applied for a supervisory custody position, i.e., either lieutenant or sergeant, within the Corrections Department. *Id.* As such, Plaintiff requested to go from an Administrative Law Judge (pay band 70) to a Correctional Officer Sergeant or Lieutenant (pay band 50). *Id.* at 4. The reason Plaintiff requested this reduction in

classification is that correctional officers are eligible for retirement after 20 years of service, whereas hearing officers are not eligible to retire until they reach 25 years of service.  *Id.*

Plaintiff was not successful in her May 2005 bids to become Correctional Officer Sergeant or Lieutenant.  *Id.* at 6-7.  Although the Department of Corrections contends that Plaintiff was bypassed for these positions because of the March 2005 letter of reprimand, Plaintiff claims that the three men who were ultimately placed in the Sergeant and Lieutenant positions also had letters of reprimand for more egregious infractions than Plaintiff.  *Complt.* at ¶¶ 13-15.  Plaintiff believes she was bypassed for the Sergeant and Lieutenant positions because she is a woman.  *Id.* at ¶¶ 34-35.

Discrimination also exists, according to Plaintiff, in terms of compensation.  *Id* at ¶ 35.  In her position as an Administrative Law Judge, Plaintiff was compensated within the State Personnel Office pay band of 70.  *Motion* at 3, ¶ 3; *Resp.* at 1, ¶ 3.  The Correctional Officer Sergeant and Lieutenant positions for which Plaintiff applied were in pay band 50.  *Motion* at 4, ¶ 14; *Resp.* at 2, ¶ 14.  Defendant argues that Plaintiff was therefore effectively seeking a reduction in pay.  *Motion* at 4, ¶ 13.  But Plaintiff claims that the ten percent reduction in pay should have been offset by a ten percent increase that normally accompanies supervisory positions, and she contends the Sergeant and Lieutenant positions were supervisory positions.  *Resp.* at 2, ¶ 13.  As a result, Plaintiff's position is that her salary should have been unchanged had she received the Sergeant or Lieutenant positions for which she applied.  *Id.*

In 2006, Plaintiff applied for and was offered a position as Correctional Officer Lieutenant.  *Motion* at 8, ¶ 36; *Resp.* at 7, ¶ 36.  Plaintiff declined the Lieutenant position, believing she was denied the ten percent increase available for supervisors.  *Motion* at 8, ¶¶ 36 &

40; *Resp.* at 8, ¶ 40.  Defendant contends that Plaintiff's proposed pay rate of $16.061 per hour was commensurate to the average pay of existing Lieutenants, which was calculated to be $16.46.  *Motion* at 9, ¶¶ 39-40; *Resp.* at 8, ¶¶ 39-40.  Plaintiff's proposed pay rate was fair and consistent with State Personnel Board Rules, according to Defendant, in that the rate reflected appropriate placement with pay band 50, particularly given that it was commensurate with more experienced Lieutenants who had been employed continuously within the custody series. *Motion* at 9, ¶¶ 37-41.  Although Plaintiff's Response suggests she would have accepted the Lieutenant position with a ten percent pay increase for supervisor status, *Resp.* at 10, ¶ 42, Defendant argues that Plaintiff advised that she would accept the position if she suffered no reduction in pay *plus* received a ten percent increase for supervisor status, *Motion* at 9, ¶ 42. Outside of the Lieutenant's position, Plaintiff also claims that the male who replaced her as an Administrative Law Judge was paid more than she had been paid in that position.  *Resp.* at 13, ¶ 60.

In addition to her discrimination claims, Plaintiff contends she was subject to a hostile work environment as an employee of Defendant.  *Complt.* at ¶ 35.  Specifically, Plaintiff complains about a single interaction in 2007 with a male supervisor, Morris Hayes.  *Complt.* at ¶¶ 22-30; *Motion* at 10-12, ¶¶ 46-59; *Resp.* at 12-13, ¶¶ 46-59.  The parties do not dispute the following facts related to this interaction: (1) Plaintiff questioned Hayes about his directions about how to handle property; (2) Hayes responded by telling Plaintiff, "I don't know who [the] f*** you are.  You f***ing think you can do whatever the f*** you w[ant] around here.  You have always gotten away with whatever you f*** you want to do"; (3) Plaintiff reported this interaction to Deputy Warden Deanna Hoisington, who determined that Hayes had been unprofessional and that Plaintiff had been unprofessional and insubordinate; (4) Both Plaintiff

3

and Hayes received letters of reminder (Defendant's lowest form of discipline); (5) Plaintiff's letter of reminder was removed from Plaintiff's file; and (6) Plaintiff admits she was not damaged by having the letter of reminder in her file. *Motion* at 10-12, ¶¶ 46-59; *Resp.* at 12-13, ¶¶ 46-59.

Finally, Plaintiff alleges Defendant retaliated against her for filing a complaint with the EEOC in May of 2005. Plaintiff claims Defendant's retaliation takes three forms: (1) failure to place her in a sergeant or lieutenant's position, (2) failure to compensate her equal to similarly situated males, and (3) subjecting her to a hostile work environment. *Complt.* at ¶¶ 38-9.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In response to a motion for summary judgment, a party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." FED.R.CIV.P. 56(e)(2). The party opposing summary judgment must present specific, admissible facts from which a rational trier of fact could find in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the Court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Adler* at 670 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 265).

**III.   DISCUSSION**

    A.   <u>Actionable Workplace Discrimination</u>

        *1.   Prima Facie Case*

"To establish a prima facie case of disparate treatment, a plaintiff must demonstrate: (i) that she belongs to a protected class; (ii) that she suffered from an adverse employment action; and (iii) that her employer treated similarly situated employees differently." *Semsroth v. City of Wichita*, 304 Fed.Appx. 707, 718 (10th Cir. 2008) (citing *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir.2005)). Defendant challenges Plaintiff on the second and third of these elements. *Motion* at 14.

        *a.   Adverse Employment Action*

No adverse employment action occurred in this case, according to Defendant, because Plaintiff sought a voluntary reduction in classification. *Motion* at 14-15. When she was not selected for the Lieutenant's position in 2005, she remained an Administrative Law Judge, receiving higher pay. *Id.* In 2006, Plaintiff was offered a position as Lieutenant, but she declined to take the position because of a salary dispute. *Id.* at 15. Ultimately, Plaintiff took a position as a Correction Officer, where she voluntarily accepted a 10% pay cut but also received a higher salary than she had been offered as a Lieutenant. *Resp.* at 8-9, ¶ 40 & 14-15. Defendant argues there was no involuntary demotion or reduction in pay and, therefore, no adverse employment action. *Id.*

While "a mere inconvenience or an alteration of job responsibilities" does not amount to adverse employment action, adverse action does include any "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480

F.3d 1192, 1203 (10th Cir. 2007) (quotation omitted).

Plaintiff contends she was passed over for "promotion" to Sergeant and Lieutenant positions in 2005 and 2006, which affected her ability to retire at an earlier date. *Resp.* at 14-15. The Court agrees that even though the Sergeant and Lieutenant positions were classification reductions for Plaintiff, being passed over for these positions could constitute adverse employment action to the extent that such action effectively precluded Plaintiff from earlier retirement. *Cf. Orr v. City of Albuquerque*, 417 F.3d 1144, 1150-51 (10th Cir. 2005) (finding adverse employment action where female employees were required to take sick leave rather than compensatory time while on maternity leave, thereby diminishing leave reserves for early retirement). However, given that she began her employment with Defendant in 1987 and that the early retirement available to those in custody positions required a minimum of 20 years, Plaintiff was not eligible to retire under any circumstances until at least 2007. *Motion* at 2 & 4, ¶¶ 1 & 9; *Resp.* at 1 & 2, ¶¶ 1 & 9. It is undisputed that Plaintiff was offered a custody position as a Lieutenant in 2006—before Plaintiff would have been eligible for early retirement—and that Plaintiff declined that position. *Motion* at 8, ¶ 36; *Resp.* at 7, ¶ 36. Further, Plaintiff admits that Defendant placed her in a different custody position as of December 2006—before she became eligible for early retirement. *Resp.* at 15. As such, no adverse action exists related to any loss of eligibility for early retirement.

Separate from her retirement-related claims, Plaintiff also claims adverse employment action in that the pay rate she was offered for the Lieutenant position was lower than the men who held this position at the time[1]. *Resp.* at 14-15. Indeed, Defendant admits that it offered

---

[1] Plaintiff states that her own research indicated that Lieutenants were making an average of $18.00 per hour, while she was offered only $16.061 per hour. *Resp.* at 10, ¶ 42. In her

6

Plaintiff $16.02 per hour for this position, *Motion* at 9, ¶ 38, whereas existing Lieutenants were paid an average of $16.46, *id.* at 9, ¶ 39. Since Plaintiff declined to accept the Lieutenant position, however, she suffered no change in employment status or benefits. Plaintiff similarly argues that she was paid less in her position as Administrative Law Judge than the male employee who replaced her in that position. *Resp.* at 13, ¶ 60. Monetary loss to Plaintiff is generally sufficient to establish the adverse employment action element of Plaintiff's prima facie case. *Sanchez v. Denver Public Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (noting that the Tenth Circuit construes "adverse employment action" broadly and obviously includes monetary losses in the form of wages and benefits). Because Plaintiff did not accept the Lieutenant position at $16.02 per hour, there is no evidence of actual monetary loss or other affect on the terms and conditions of Plaintiff's employment. Further, Plaintiff voluntarily accepted a reduction in classification and pay from her position as Administrative Law Judge. In other words, Plaintiff's monetary loss was a consequence of her own voluntary action rather than any employment action imposed upon her by the Department. The Court therefore finds that Plaintiff has failed to establish the adverse employment action element of her prima facie case for discrimination.

      b.      *Similarly Situated Others*

Even assuming that Plaintiff could satisfy the element of adverse employment action, she has not shown that Defendant treated similarly situated others differently. None of the male employees who were selected for the Sergeant and Lieutenant positions for which Plaintiff

---

deposition, Plaintiff claims she "pulled the documentation" of the other Lieutenants' salaries with the assistance of Defendant's personnel offer, *id.* at Ex. A, p. 69:21-70:15, but no such documentation is provided. *Hubbard v. United Svcs. Auto Ass'n*, 264 Fed.Appx. 696, 698 (10th Cir. 2008) (holding that "where the burden to present such specific facts by reference to exhibits and the existing record was not adequately met below, we will not reverse a district court for failing to uncover them itself") (internal quotation omitted).

applied in 2005 were similarly situated to Plaintiff. First, all three males were working within the custody series at the time, unlike Plaintiff who had not worked within the custody series for at least ten years. *Motion* at 6-7, ¶¶ 26 & 28. Second, none of the three males who were promoted to the Sergeant and Lieutenant positions had been disciplined in the year prior to their application for promotion. *Motion* at 7, ¶ 30. Plaintiff, by contrast, was issued a letter of reprimand in March 2005—just two months prior to her initial application for the Sergeant and Lieutenant positions. *Id.* at 3, ¶ 4. In fact, Plaintiff agrees it was Defendant's regular practice to bypass applicants like herself, who had been disciplined within a year prior to a requested "promotion." *Motion* at 5, ¶ 17; *Resp.* at 3, ¶ 17.

Adverse action nonetheless exists, according to Plaintiff, in that she claims she was offered less money to assume the Lieutenant position than men in the same position. *Resp.* at 14-15. In support of her claim that males were paid more money, Plaintiff merely asserts that according to her own "research," the male lieutenants made $18.00 per hour compared to her offer of $16.061 per hour. *Resp.* at 10, ¶ 42. Meanwhile, Defendant attaches the affidavit of Human Resources Administrator Mary Lou Gottlieb, explaining that the Human Resources Bureau averaged the hourly rates of pay of the existing Lieutenants, which came out to $16.46, and that "[Plaintiff's] proposed pay rate of $16.061 was commensurate to the average rate of pay." *Motion* at Ex. B, ¶¶ 33-34. As Plaintiff fails to provide evidence of her alleged research, the Court cannot credit her allegations of unequal pay.

  B.  <u>Hostile Work Environment</u>

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)

(internal citations and quotations omitted).  "Pervasiveness and severity are independent and equal grounds upon which a plaintiff may establish this element of a hostile environment claim." *Tademy v. Union Pacific Corp.*, 520 F.3d 1149, 1161 (10th Cir. 2008) (internal quotation omitted).  Thus, "a sufficiently severe episode may occur as rarely as once ..., while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute." *Id.* at 1162 (internal quotation omitted).  However, "[t]he mere utterance of a statement which 'engenders offensive feelings in an employee would not affect conditions of employment to [a] sufficiently significant degree to violate Title VII." *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (quoting *Meritor*, 477 U.S. at 67).  "Title VII is not a code of workplace conduct, nor was it designed to bring about a magical transformation in the social mores of American workers." *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005).  Along these lines, it is the expectation of the United States Supreme Court that lower courts will filter out "complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

In addition to the severity and pervasiveness element of a hostile work environment claim, Plaintiff must also show that the incident with Mr. Hayes was based on gender. *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994) (holding that "[i]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment").  *See also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)) (holding that "workplace harassment, even harassment between men and women, is not automatically

9

discrimination because of sex merely because the words used have sexual content or connotations. 'The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed'").

In the present case, Plaintiff relies on a single incident of alleged harassment to establish her claim for hostile work environment. The incident, although certainly unprofessional on the part of Plaintiff's supervisor, Mr. Hayes, and understandably offensive to Plaintiff, is not shown to be the type of incident that could possibly affect Plaintiff's conditions of employment "to [a] sufficiently significant degree to violate Title VII." *Gross*, 53 F.3d at 1537. In the Court's view, this incident is typical of the "ordinary tribulations of the workplace, such as the sporadic use of abusive language" noted as unactionable by the Supreme Court in *Faragher*. 524 U.S. at 788. Proof of the relative insignificance of this incident lies in Plaintiff's own admissions that she was not damaged by having a letter of oral counseling placed in her file as a result of this incident and, further, that the incident is the only time she can recall Hayes using that type of language towards her. *Motion* at 12, ¶¶ 57 & 59.

Another reason Plaintiff cannot sustain a claim for hostile work environment is that there is no evidence that the single incident of alleged harassment is related in any way to Plaintiff's gender. Plaintiff admits the word "f***" is used regularly in the prison workplace and that she has herself used the word. *Motion* at 12, ¶ 58. But she fails to present any evidence that women are spoken to in that manner more often than men. Absent some evidence that she was exposed to terms and conditions of employment to which men were not exposed, Plaintiff cannot sustain a claim for sexual harassment. *See Oncale*, 523 U.S. at 75.

C.   Retaliation

### 1. *Prima Facie* Case

To make a *prima facie* case for retaliation, Plaintiff must show that "(1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). If a plaintiff fails to make a *prima facie* case, judgment as a matter of law is appropriate. *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001). Here, Plaintiff undisputedly engaged in protected activity when she filed an EEOC charge in May of 2005. On the second and third elements, however, Plaintiff fails to make the necessary *prima facie* showing.

### a. Adverse Action

While adverse action for purposes of a retaliation claim need not affect the terms and conditions of employment, it is necessary for a Plaintiff to show action on the part of the Department "that would have been materially adverse to a reasonable employee" or that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 64, 68, 126 S.Ct. 2405 (2006). The adverse action standard for purposes of retaliation focuses on the employer's allegedly retaliatory motive, not the underlying discrimination opposed. It is sensitive to the particular circumstances of each case, though it prescribes an objective inquiry that does not rest on a plaintiff's personal feelings about the circumstances. *Id.* at 68-70. Instead, the lens is "the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71.

The actions Plaintiff considers adverse are consistent throughout her claims. Plaintiff complains of not being chosen for "promotion" to Sergeant and Lieutenant positions in 2005 and

2006.  After not being selected, Plaintiff remained an Administrative Law Judge undisputedly earning higher pay than she would have had she been selected, but leaving her in the category of employees eligible for retirement after twenty-five years (hearing officer) rather than twenty (correctional officer).  On this point, the Court has already determined that loss of potential for earlier retirement, if established, would constitute a cognizable harm.  This remains true under the slightly different standard for retaliation.  Yet, again, the competent summary judgment evidence before the Court does not indicate that Plaintiff experienced such a loss as a result of not being chosen for the positions she sought in 2005 and 2006 or from any other Department action.  *See Discussion, Supra*.  It follows that because Defendant's actions did not create an actual loss in early retirement eligibility, it cannot be said that the Department's actions in this regard "could well dissuade a reasonable employee from making or supporting a charge of discrimination."  *Id.* at 57.  Nor can Plaintiff's alleged, but wholly unsupported, inequality in pay argument create the basis for adverse action in support of a retaliation claim. Defendant offers the affidavit of Human Resources Administrator Mary Lou Gottlieb as evidence that Plaintiff's proposed pay rate of $16.061 per hour for the Lieutenant position she declined was commensurate with the average pay of existing Lieutenants, calculated to be $16.46.  *Motion* at Ex. B, ¶¶ 33-34.  Plaintiff offers no evidence otherwise.

     Further, the Court has already determined that Plaintiff offered insufficient facts to support her hostile work environment claim because the sole incident cited by Plaintiff lacked severity and pervasiveness and was not due to Plaintiff's gender.  Similarly, the isolated incident involving Mr. Hayes cannot form the basis of a retaliation claim because it is consistent with "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."  *Faragher v. City of Boca Raton*, 524 U.S. at 788.  In

short, the Court finds that the one incident of workplace tribulation involving Hayes' foul language, and resulting in an admittedly benign letter of oral counseling in Plaintiff's file, should not dissuade a reasonable employee from making or supporting a discrimination claim. Accordingly, Plaintiff has failed to meet her burden on the critical step of establishing Department action "that would have been materially adverse to a reasonable employee" or that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. at 68.

### b. Causal Nexus

Further, Plaintiff has not established a nexus between her May 2005 protected EEOC activity and any subsequent employment action she considers adverse. In this way, Plaintiff has also failed to satisfy her initial burden on the third element of a *prima facie* case for retaliation. *Antonio v. Sygma Network, Inc.*, 458 F.3d at 1181. "'A retaliatory motive may be inferred when an adverse action closely follows protected activity. However, unless the [adverse action] is closely connected in time to the protected activity, the Plaintiff must rely on additional evidence beyond temporal proximity to establish causation.'" *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (without additional evidence, three months separating the protected activity and the adverse action was too great to justify an inference of causation) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). Here, over four months without any additional evidence save Plaintiff's own conjecture, is insufficient. *See, e.g., Annett v. Univ. of Kansas*, 371 F.3d 1233, 1241 (10th Cir. 2004).

### II. Pretext

Even if Plaintiff had made a *prima facie* case for retaliation, the Department offered a nondiscriminatory reason for its action – that being the legitimate letter of reminder placed in

13

Plaintiff's file two months before she applied for the lower pay band positions – and Plaintiff fails to provide evidence from which a reasonable trier of fact could find this reason mere pretext for retaliation. In sum, Plaintiff's retaliation claim must fail for lack of requisite *prima facie* showings on adverse action and nexus, as well as insufficient evidence from which a reasonable jury could find Defendant's justification pretextual.

## IV. CONCLUSION

For the reason discussed, each of Plaintiff's claims fails for lack of sufficient evidence to make a *prima facie* showing, lack of evidence to support a finding of pretext, or both. Therefore, summary judgment disposition in Defendant's favor will be granted.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment and Memorandum in Support Thereof (Doc. 35) is **GRANTED** and Plaintiff's claims are dismissed in their entirety with prejudice.

Dated June 15, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE